**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
ryan.ellersick@zimmreed.com
Tel: (877) 500-8780
Fax: (877) 500-8781

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYSSA TATE, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>   vs.<br><br>SOAPY JOE'S INC.,<br><br>                Defendant. | Case No.: **'25CV3119 AGS KSC**<br><br>**COMPLAINT - CLASSS ACTION**<br><br>1. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17535 & 17600, *et seq.*<br>2. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br>3. Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17200, *et seq.*<br>4. Violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*<br>5. Unjust Enrichment<br><br>DEMAND FOR JURY TRIAL |

## **CLASS ACTION COMPLAINT**

1.     Plaintiff Maryssa Tate ("Plaintiff"), individually and on behalf of all others similarly situated, by counsel, bring this action against Soapy Joe's Inc. ( "Defendant" or "Soapy Joe's") for engaging in an illegal "automatic renewal" scheme with respect to its membership plans and in doing so, violating (1) the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*; (2) the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §1770, *et seq*.; and (3) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

2.     Plaintiff also brings this action on behalf of all consumers nationwide whose bank accounts were subject to a recurring debit of their bank account or debit card to pay for Defendant's monthly services, but who did not provide written authorization to Defendant to enter into such an Electronic Funds Transfer arrangement, did not receive a copy of the terms upon which they were subject to an autopay arrangement with Defendant, and/or were charged after they expressly withdrew any authorization for an electronic funds transfer autopay arrangement. All of these constitute a violation of the Electronic Funds Transfer Act ("EFTA").

3.     Defendant is a car wash operator that owns and operates physical car wash locations in California.

4.     Defendant offers individual car washes and car washes under a membership model.

5.     Customers who visit the Defendant's physical car wash locations are regularly signed up for automatically renewing car wash memberships without their knowledge or consent. Specifically, customers that fall prey to Defendant's scheme believe they are only purchasing a single car wash or a single month of car washes, but are instead enrolled in a car wash membership by Defendant.

6.     Even for those customers who intend to enroll in a car wash membership, Defendant fails to clearly and conspicuously disclose vital details of the membership

1  program as required under California law, including, but not limited to, the fact that the
2  membership will automatically renew each month.

3      7.    By failing to clearly and conspicuously disclose these details, including
4  failing to present the automatic renewal offer terms in a clear and conspicuous manner
5  on its website and in-person at its car wash locations prior to the customers being
6  enrolled in the membership, Defendant systematically violates the California Automatic
7  Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, *et seq*.

8      8.    Defendant also violates the ARL by: (1) failing to disclose clearly and
9  conspicuously how to cancel the membership prior to signup; (2) failing to receive
10 customers' affirmative consent before enrolling them in the membership; and (3) failing
11 to clearly and conspicuously disclose that the price of the membership will
12 automatically increase.

13     9.    Defendant's practices violate multiple California consumer protection
14 statutes and unjustly enrich Defendant.

15     10.   Plaintiff asserts this action individually and on behalf of all others similarly
16 situated, seeking monetary damages, restitution, declaratory and injunctive relief, and
17 attorneys' fees.

18                                  **PARTIES**

19     11.   Plaintiff Tate is a citizen of California and a resident of San Diego County.

20     12.   Defendant is a California corporation that owns and operates car washes
21 throughout California. Defendant is headquartered in San Diego County, California.

22                          **JURISDICTION AND VENUE**

23     13.   This Court has subject matter jurisdiction over this action under 28 U.S.C.
24 § 1331 because the Complaint asserts claims pursuant to Defendant's violations of the
25 EFTA, 15 U.S.C. § 1693, *et seq.*   The Court has supplemental jurisdiction over
26 Plaintiff's state law claims under 28 U.S.C. § 1367.

27     14.   The Court may assert personal jurisdiction over Defendant, because
28 Defendant is doing business within this State and transacts business within this State

such that it has sufficient minimum contacts with California and/or has purposely availed itself of California markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiff's claims arise out of Defendant's unlawful in-state actions.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b), because Defendant's principal place of business is within this District, and because a substantial part of the events giving rise to claims at issue occurred in this District.

16.    In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that she purchased a car wash from Soapy Joe's in El Cajon, California. Plaintiff's declaration is attached hereto as Exhibit A.

## BACKGROUND FACTS

17.    The subscription model is a business model in which retailers provide ongoing goods or services in exchange for regular payments from the customer. Subscription e-commerce services particularly have grown exponentially over the last few years, but brick-and-mortar businesses utilize this business model as well. Indeed, these subscription services now target a wide range of customers and cater to a variety of specific interests ranging from fast food subscriptions to car wash subscriptions.

18.    As the subscription economy engulfs multiple sectors of the consumer economy, companies have turned to dark patterns to hook consumers and prevent them from cancelling services. In particular, companies have found that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[1] Companies have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their

---

[1] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

CLASS ACTION COMPLAINT

membership[s]."[2] As these companies have realized, "[t]he real money is in the inertia."[3] As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[4]

19.    In recent years, there has been an explosion in the number of car washes opened in the U.S.[5] This explosion has been fueled by the innovation of subscription car wash models—car washes that allow for customers to take advantage of unlimited washes for a monthly fee.[6] Unfortunately, numerous car wash businesses—including Defendant—have failed to ensure that they adequately disclose the terms of the automatically renewing membership to consumers as required under California law.

20.    Soapy Joe's owns and operates more than 20 car wash locations in California.

21.    Defendant's practices and procedures, as well as signup and cancellation processes, are the same or similar across all of its locations.

22.    Defendant has successfully implemented the tactics described below in order to induce more customers into signing up for automatically recurring car wash memberships, to keep those customers subscribed for as long as possible, and to obstruct the cancellation process.

## I.    CALIFORNIA AUTOMATIC RENEWAL LAW

23.    The California legislature enacted the California Automatic Renewal Law (the "ARL"), Cal. Bus. & Prof. Code, § 17600 *et seq.*, "to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the

---

[2] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/_f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.
[3] *Id.*
[4] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.
[5] Patrick Sisson, *Why Are There Suddenly So Many Car Washes?*, BLOOMBERG (Feb. 21, 2024 at 8:00 AM EST), https://www.bloomberg.com/news/features/2024-02-21/car-washes-are-taking-over-the-us-here-s-why.
[6] *Id.*

CLASS ACTION COMPLAINT

consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."

24. To achieve this goal, the ARL makes it unlawful for any business to, among other things, make an automatic renewal offer or continuous service offer to a customer in California and do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchase agreement pricing will change upon conclusion of the trial.

(2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

(4) Fail to provide a consumer with a notice, as may be required by subdivision (b), that clearly and conspicuously states all of the following:

(A) That the automatic renewal or continuous service will automatically renew unless the consumer cancels.

(B) The length and any additional terms of the renewal period.

(C) One or more methods by which a consumer can cancel the automatic renewal or continuous service.

(D) If the notice is sent electronically, the notice shall include either a link that directs the consumer to the cancellation process, or another reasonably accessible

- 6 -

electronic method that directs the consumer to the cancellation process if no link exists.

(E) Contact information for the business.

Cal. Bus. & Prof. Code § 17602(a)(1)-(4).

25.   The "automatic renewal offer terms" that must be presented clearly and conspicuously include:

(1) That the subscription or purchasing agreement will continue until the consumer cancels.
(2) The description of the cancellation policy that applies to the offer.
(3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
(4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
(5) The minimum purchase obligation, if any.

*See* Cal. Bus. & Prof. Code § 17601(a)(2)(A)-(E).

26.   A "clear and conspicuous" disclosure in relation to the ARL "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language. In the case of an audio disclosure, "clear and conspicuous" and "clearly and conspicuously" means in a volume and cadence sufficient to be readily audible and understandable." Cal. Bus. & Prof. Code § 17601(a)(3).

27.   After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms," and "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(2)-(3). The ARL specifically states that "[i]f the automatic renewal offer or continuous service offer

CLASS ACTION COMPLAINT

includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services." Cal. Bus. & Prof. Code § 17602(a)(3).

28. Further, the method for cancellation must be "cost-effective, timely, and easy-to-use." Cal. Bus. & Prof. Code § 17602(c).

**II.    DEFENDANT'S MEMBERSHIP SIGNUP PROCESS**

**a.    Defendant's Online Membership Enrollment Process Violated Automatic Renewal Laws and Misled Reasonable Consumers.**

29. Customers can purchase a single car wash or car wash membership from Defendant online at the Soapy Joe's website (https://soapyjoescarwash.com/) or purchase a single car wash or car wash membership at one of Defendant's car wash locations.

30. Before May 2025, if a customer were to purchase a membership on Defendant's website, they would have seen the following screens:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





CLASS ACTION COMPLAINT

31.     As shown above, Defendant completely failed to clearly and conspicuously disclose on its website that its membership would automatically renew each month until it was cancelled. Nor did Defendant clearly and conspicuously disclose how to cancel its membership at the time of checkout. Put simply, Defendant's website was void of this required information. Indeed, Defendant offered little to no information whatsoever to consumers regarding its auto-renewal scheme.

32.     In or about May 2025, Defendant changed its website to include certain disclosures regarding its autorenewal policy.

**b. Defendant's Process for Enrolling Customers in Memberships at their Physical Car Wash Locations Violates Automatic Renewal Laws and Misleads Reasonable Consumers.**

33.      As noted above, another way for consumers to purchase car wash services is in-person at Defendant's brick-and-mortar car wash locations.

34.     Upon information and belief, Defendant's employees are uniformly trained and instructed to take consumers' payment information and place an order for a car wash membership for them. Through this purchase method, Defendant systematically

CLASS ACTION COMPLAINT

enrolls customers in car wash memberships without providing the required disclosures, in violation of the California ARL and other consumer protection laws.

35. When customers, like Plaintiff, are enrolled by employees, the disclosures are even more deficient, and even non-existent. This is because Defendant neglects to train employees to comply with the ARL and make the required disclosures when they sign up customers for a membership. Instead, upon information and belief, Defendant uniformly trains employees to sign up as many customers for their membership scheme as possible.

36. As a result, Defendant fails to provide clear and conspicuous disclosures that its memberships will automatically renew at its physical locations. Nor does Defendant clearly and conspicuously disclose to customers at its physical locations how they can cancel their memberships.

37. Defendant's employees—acting as agents for Defendant—also omit that memberships will automatically renew unless the customer cancels, and omit to tell the consumers how to cancel the membership. Further, Defendant's employees also omit that the price of the membership will automatically increase after an initial promotional period, and omit the amount of the increase.

38. Upon information and belief, Defendant's employees are trained, through standard company-wide policies and procedures, to omit any information regarding the automatic renewal nature of the membership or any information about how to cancel the membership. In short, employees are uniformly trained to *omit* the terms of its memberships and cancellation policy in order to sign up as many customers for the automatically renewing membership as possible.

## III. DEFENDANT'S PROMOTIONAL DISCOUNT SCHEME

39. Defendant regularly offers its memberships at discounted prices in order to incentivize customers to sign up.

CLASS ACTION COMPLAINT

40.     However, Defendant does not disclose to customers who sign up that the price quoted to customers is a "discount" price that will increase substantially after a brief discount period of one or two months.

41.     Defendant also does not disclose that by purchasing a month of car washes for this "promotion" the customer will be automatically enrolled in an automatically renewing monthly membership.

42.     Defendant fails to disclose, before the consumer makes a purchase, that the price of the membership will increase—normally to the most expensive membership option—after a promotional period.

43.     Defendant similarly fails to disclose what the new price of the membership will be.

44.     This directly violates the California ARL, which states that Defendant must present the automatic renewal terms "in a clear and conspicuous manner **before the subscription or purchasing agreement is fulfilled** and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1) (emphasis added).

45.     On information and belief, it is part of Defendant's systematic training, policy, and procedures for employees to omit any information about the promotional period or the details of any future price increase.

46.     Defendant's misrepresentations and omissions related to its promotional discounts are deceptive and mislead reasonable consumers.

47.     Defendant's deliberate failure to train their employees to comply with the ARL when selling Defendant's products and services to a consumer violates the ARL and California law.

IV.     **PLAINTIFF'S EXPERIENCES**

48.     On or around January 13, 2025, Plaintiff visited the Soapy Joe's Car Wash located in El Cajon, California.

49.    At the time of her purchase, an employee of Soapy Joe's told Plaintiff that she could purchase a one-month promotion for unlimited washes for $13. After Plaintiff expressed interest in the one-month promotion, this same employee took Plaintiff's debit card and signed her up for an automatically renewing membership without telling her.

50.    Plaintiff did not interact with any kiosk or receive any disclosures regarding auto-renewal or cancellation before she was signed up. In accordance with Defendant's policies and training, Defendant's employee did not clearly and conspicuously disclose before she was signed up that Plaintiff was actually being enrolled in a membership that would automatically renew until it was cancelled, nor did the employee disclose how to cancel the membership.

51.    Defendant's employee also failed to disclose before signing up Plaintiff that the $13 was merely a promotional price, and that the price of the membership would increase to $25 per month after the first month of membership.

52.    Plaintiff did not know she was being enrolled in an automatically renewing membership that would charge her $25 per month until she cancelled. Plaintiff believed she was paying $13 for a single month of car washes.

53.    Thus, contrary to the requirements of the ARL, Defendant did not clearly and conspicuously disclose before the Plaintiff was signed up that this membership would automatically renew each month until it was cancelled, how to cancel the membership, or that the membership would increase in price and what new price would be charged.

54.    If Plaintiff had known the membership would automatically renew at a higher price each month, she would not have purchased a month of car washes.

55.    On or around January 13, 2025, Plaintiff was automatically charged $13. On or around February 12, 2025, Plaintiff's debit card was automatically charged $25, without her express authorization or permission. On or around March 12, 2025,

Plaintiff's debit card was again automatically charged $25 without her express authorization or consent.

56.    On April 13, 2025, Defendant attempted to charge Plaintiff's debit card again, but the charge was declined. Defendant sent Plaintiff a text message telling her the charge was declined. This was the first notice Plaintiff received from Defendant that she was being charged for an automatically renewing membership. Plaintiff promptly responded to the text message and told Defendant that she did not sign up for a monthly membership.

57.    Defendant ignored Plaintiff's message and attempted again to charge Plaintiff's debit card on April 19, 2025. Plaintiff received another text informing her that her card was declined. Plaintiff again sent a text message to the same phone number Defendant's messages were coming from demanding that Defendant stop charging her and reiterating that she never signed up for a monthly membership.

58.    Plaintiff did not authorize Defendant to automatically renew her membership for $25 each month.

59.    Plaintiff has requested a refund of these charges from Defendant, but has not received a full refund for all charges beyond the initial price she paid when signing up.

60.    Had Plaintiff known she was being enrolled in an automatic renewal service when she went to the car wash in or around January 13, 2025, she would not have purchased a car wash.

61.    Plaintiff suffered real monetary loss as a result of Defendant's failure to disclose its autorenewal policy and from Defendant's deceptive billing practices.

## V.    PLAINTIFF'S EXPERIENCE IS NOT UNIQUE

62.    Defendant is well aware that its car wash membership scheme deceives consumers. Soapy Joe's customers have complained of Defendant's deceptive billing practices on websites like the Better Business Bureau ("BBB"):

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 👤 Initial Complaint

**Date:** 05/13/2025

**Type:** 💲 Billing Issues

**Status:** 💬 Answered

I am being charge $39.00 a month from Soapy ***** and I don't understand why I am not being so far soapy joes have draft my account for about $300.00. I have tried reaching out to soapy joes to understand why I am being charge but no answer from soapy joes customer service.

## 👤 Initial Complaint

**Date:** 05/06/2025

**Type:** 🛒 Product Issues

**Status:** 💬 Answered

Soapy Joe's Car Wash provides a monthly subscription option, but cancelling said subscription is extremely complicated/difficult, even with plenty of tech savy. It took me several attempts navigating their intentionally confusing website, before I could finally cancel my membership (took a few days after I gave up twice). I tried calling initially with no answer, and finally found an email for customer service (also conveniently well hidden on their website). My issues that I was charged for an additional month (haven't used this service in weeks now), and am being told by customer service that they REFUSE to refund my money, though I have not used their service since cancelling. I expect my money to be refunded immediately, or I will be filing a complaint with the CA Business Oversight!

## 👤 Initial Complaint

**Date:** 03/14/2025

**Type:** 🔧 Service or Repair Issues

**Status:** 💬 Answered

Soapy Joes has been charging a monthly subscription to my credit card without my permission. I purchased one one last August and never check my credit card statement because I dont use the card. They will not reimburse me for the charges totaling $175.The store was in ****************************** and I have contacted corporate and spoke with them in the phone twice.Their ****** reviews suggest this is a common practice and it needs to stop. Thanks for your help.

## 👤 Initial Complaint

**Date:** 02/08/2024

**Type:** 👤 Customer Service Issues

**Status:** 💬 Answered

Last fall I moved out of the ********* area and reached out to cancel my membership with Soapy ***'s Carwash. I have been unable to make contact with any member of their team, despite repeatedly calling their customer service number and leaving detailed messages and sending messages through their website. Soapy ***'s renewed two of my memberships despite my request to cancel.

CLASS ACTION COMPLAINT

👤 **Initial Complaint**                     **Type:** 💺 Customer Service Issues

**Date:** 02/01/2025                         **Status:** ✂ Unanswered

I have cancelled my membership online with Soapy ***** on 4 different occasions. I still get charged every month for $33.00. I first cancelled the service in October as I am deployed for military duty and I won't be coming back for 18 months. I still continue to get billed for a service I don't use and I have cancelled.

👤 **Initial Complaint**                     **Type:** 🔧 Service or Repair Issues

**Date:** 01/08/2025                         **Status:** ✂ Unanswered

01/08/25 I called soapy joes to cancel their most expensive membership which was just charged to my bank account and ask for a refund due to no use of service and was told basically 'sorry not sorry' we dont do refunds. Which us ridiculous if I havent used their service in more than a month and the charge just happened. If i had used their sevice even once this month, then I would not feel the right to ask for a refund but I have not. They shouldnt be able to do that. It seems like they just take your money even if you do not use their service. Horrible business practices.

👤 **Initial Complaint**                     **Type:** 🔧 Service or Repair Issues

**Date:** 11/16/2024                         **Status:** ✂ Unanswered

I keep getting charged by Soapy Joes on my Debit card so I cannot cancel the transaction or request a refund. When I call corporate they do not answer. I have been wrongfully charged the $25 MONTHLY fee THREE times in the past week, reported every charge and contacted Soapy Joes for hours only to be told they are closed during business hours they have posted. Im requesting a refund and cancellation of my account in addition to contact from Soapy Joes on either this issue being resolved or how to resolve the issue expeditiously.

👤 **Initial Complaint**                     **Type:** 🛒 Product Issues

**Date:** 10/14/2024                         **Status:** ✂ Unanswered

After providing all the requested information to cancel my subscription and confirming multiple times with customer support that my subscription was canceled, my card was still charged.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

👤 **Initial Complaint**                                    **Type:** 🛠 Service or Repair Issues

**Date:** 05/02/2024                                        **Status:** ✂ Unanswered

Soapy **** increased billing without notifying. In addition to this; the company does not provide receipt each month. This can lead to unethical business practices. Auto charging for services should have a receipt for the sale. Not to mention; the business has damaged vehicles but then tries to hold customers to a hold harmless based on rules in the bay. It states to tuck mirrors into the car before going through the wash, they have a worker on staff that should be performing that duty to prevent damage if possible.

👤 **Initial Complaint**                                    **Type:** 🛒 Product Issues

**Date:** 03/26/2024                                        **Status:** ✅ Resolved

Fast pass#(51248+461228)It has become hard speaking with someone over the phone. It wasn't always this way but over the last 6-8 months contacting customer service is a task. My concern is regarding billing and not a specific location. The number to contact customer service *************) is linked to all locations.I called yesterday at 8:04 and 8:42am both times the message was they are currently closed and to call back during normal hours of 8am - 5pm. I called at 4:29 exactly, we're now closed call back during normal business hours message.My issue is billing. I was offered three months half off in lieu of canceling. I accepted the promo versus continuing to cancel. I never received the email confirmation. I should have taken a screenshot as I normally do of any form of confirmation because things happen. As in my case. I called several times, different days. I was unable to speak with a service representative. My last resort was message via email. (See attached).I received a response that did not answer my questions. I feel it was a quick let me move on type of response. In addition, the response was incorrect because I was charged the standard price versus half off (See attached). I was unsure of the debit dates and why I asked. I thought my payment was due the 25th. It was the 24th and my card was turned off. The charge was not processed but I was notified to turn on my card. Due to fraud and money taken unauthorized I do not leave the account open by keeping the card on unless in use or for an expected debit.I have attached the previous email conversation and response from a team member. And the charge debited 3.25.24. With everything increasing in price including prices at Soapy ***'s effective April 2nd. It is helpful to have actual customer service support available for issues for whatever reason that *** arise.

👤 **Initial Complaint**                                    **Type:** 🛠 Service or Repair Issues

**Date:** 01/10/2024                                        **Status:** 💬 Answered

I used my debit card to purchase a single car wash at Soapy Joes in ***********. It automatically enrolled me in a membership that I did not want nor have I used. I am being charged $20/month by them. I am unable to cancel because I never entered an email address or any information when I was scammed into the membership.

CLASS ACTION COMPLAINT

👤 **Initial Complaint**                    **Type:** ⚒ Service or Repair Issues

**Date:** 12/28/2023                        **Status:** 🔧 <u>Answered</u>

I took my car to the carwash. The carwash scratched my window. They will Not take responsibility. They also Have no way to cancel Their Memberships.

---

63.     As shown above, customers regularly encounter the same problems as Plaintiff: Defendant failing to disclose the automatic renewal terms, failing to disclose that a membership price will increase, and making it exceedingly difficult for customers to cancel the memberships.

## VI.    DEFENDANT VIOLATES THE CALIFORNIA ARL

64.     Defendant violates the California ARL in at least four ways: (1) by failing to disclose clearly and conspicuously before purchase that the membership will automatically renew; (2) by failing to disclose clearly and conspicuously before purchase the description of the cancellation procedure that applies to the policy; (3) by failing to clearly and conspicuously disclose before purchase that the price given to customers is a discounted price and that the membership will automatically renew at a higher price after the discount period has expired; and (4) by failing to obtain the affirmative consent of the customer prior to enrollment in the membership. *See* Cal. Bus. & Prof. Code §§ 17601-17602.

## VII.   PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW

65.     Plaintiff seeks damages and, alternatively, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

66.     A legal remedy is not adequate if it is not equally certain, prompt, or efficient as an equitable remedy. Here, there are several reasons legal remedies do not provide those benefits to Plaintiff.

67.    First, equitable claims may be tried by the court, whereas legal claims are tried by jury. The need for a jury trial may result in delay and additional expense as opposed to a bench trial.

68.    Additionally, the court's discretion in fashioning equitable relief is broader and can be awarded in situations where the entitlement to damages may prove difficult. To obtain a full refund as damages, Plaintiff may need to show that the membership she purchased has essentially no market value. In contrast, Plaintiff can seek a full refund as restitution without making this showing. This is because Plaintiff purchased a membership that she would not have otherwise purchased but for Defendant's misrepresentations. Thus, obtaining a full refund at law is less certain than obtaining a refund in equity.

69.    Furthermore, the elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. The scope of actionable conduct under the UCL's "unfair" prong is broader than that of the other causes of action asserted herein to encompass, for example, the overall automatic renewal scheme related to Defendant's memberships. Thus, Plaintiff may be entitled to restitution under the UCL, while not entitled to damages under other causes of action.

70.    Finally, legal damages, absent an injunction prohibiting Defendant's unlawful behavior, do not adequately address the imminent threat of future harm faced by Plaintiff. Plaintiff would purchase or consider purchasing a car wash or membership from Defendant again in the future if she could feel sure that Defendant's automatic renewal membership scheme was truthful and lawful. Without an injunction, Plaintiff has no way of knowing whether she is going to be automatically enrolled in an automatically renewing membership without her consent or charged a different price without her consent. Thus, Plaintiff would be unable to rely on Defendant's future advertising and cannot purchase products or services that she would otherwise have interest in purchasing.

# CLASS ACTION ALLEGATIONS

71.    *Description of the Classes*: Plaintiff brings this action individually and on behalf of the following Classes of persons:

> California Sub-Class: All persons in California who, within the applicable statute of limitations period, were (1) automatically enrolled in a Soapy Joe's Car Wash membership in-person and were charged at least one renewal fee by Defendant; and/or (2) automatically enrolled in a Soapy Joe's Car Wash membership through Defendant's website prior to May 2025 and were charged at least one renewal fee by Defendant.

> The EFTA Class: All persons in the United States who, within the applicable statute of limitations period, were debited on a recurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, or after the authorization had been revoked.

72.    The EFTA Class and the California Subclass are collectively referred to herein as the "Classes."

73.    Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

74.    Excluded from the Classes are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

75.    The time period for the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

76.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23, and all requirements are met for the reasons set forth in the following paragraphs.

77.    Numerosity: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Classes are unknown at this time and can be ascertained

only through appropriate discovery. Plaintiff estimates the number of members in the Classes to be in the thousands.

78.   <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

**a.** Whether Defendant's membership scheme constitutes an "automatic renewal" within the meaning of Cal. Bus. & Prof. Code § 17600, et seq.;

**b.** Whether Defendant failed to provide the clear and conspicuous language required by Cal. Bus. & Prof. Code § 17602;

**c.** Whether Defendant placed an automatically renewing charge on Plaintiff's and Class Members' accounts;

**d.** Whether Defendant's cancellation procedure was clearly and conspicuously disclosed;

**e.** Whether Defendant charged Plaintiff and Class members without their authorization;

**f.** Whether Defendant received Plaintiff's and Class members' affirmative consent before enrolling them in an automatically renewing membership;

**g.** Whether Defendant's conduct constitutes unfair, unlawful, and/or fraudulent practices prohibited by the laws of California;

**h.** Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;

**i.** Whether Defendant unjustly enriched itself to the detriment of Plaintiff and members of the Classes;

**j.** Whether Defendant violated the Electronic Funds Transfer Act;

**k.** The proper method or methods by which to measure damages; and

**l.** The declaratory and injunctive relief to which the Classes are entitled.

79. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by Defendant's common course of misconduct.

80. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

81. <u>Superiority of Class Action</u>: Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

82. <u>Risk of Inconsistent or Varying Adjudication</u>: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendant as the parties opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not

party to the adjudication or would substantially impair or impede their ability to protect their interests.

83.    <u>Action Generally Applicable to Classes as a Whole</u>: Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**

**(Cal. Bus. & Prof. Code §§ 17535 & 17600, *et seq*.)**

**(On behalf of Plaintiff and the California Class*)***

84.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

85.    During the applicable statute of limitations period, Defendant enrolled consumers, including Plaintiff and Class members, in automatic renewal and/or continuous service membership programs and has (a) failed to present the automatic renewal or continuous service offer terms in a clear and conspicuous manner before the membership agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation of § 17602(a)(1); (b) charged the consumer's credit cards, debit cards, or third-party payment accounts for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal or continuous service offer terms, in violation of § 17602(a)(2); (c) charged the customer a higher price than was disclosed at the time of signup and charged the customer this price without their authorization, in violation of 17602(a)(1)-(2); and (d) failed to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of § 17602(a)(3).

86.    Plaintiff and the California Class have suffered injury in fact and lost money as a result of Defendant's violations alleged herein because they either would not have purchased a car wash or membership from Defendant in the first place, or would have taken other steps to avoid becoming enrolled in and/or charged for Defendant's membership, such that Plaintiff and the Class would not have paid any money to Defendant for the membership.

87.    Plaintiff relied on Defendant's omissions when purchasing the car wash memberships.

88.    Pursuant to § 17535, Plaintiff and Class members are entitled to restitution of all amounts that Defendant charged for the car wash membership during the four years preceding the filing of the initial Complaint in this action and continuing until Defendant's statutory violations cease.

89.    Further, Plaintiff was injured by Defendant's misconduct because it caused Plaintiff and Class members to spend money on products and services that they would not otherwise have spent.

90.    As a result of Defendant's misconduct, pursuant to Cal. Bus. & Prof. Code § 17603, all services and products under the automatically renewing membership are treated as unconditional gifts, and Plaintiff and the Class are entitled to restitution of all amounts that Defendant charged or caused to be charged to Plaintiff's and Class members' payment methods during the applicable statute of limitations and continuing until Defendant's statutory violations cease.

91.    Plaintiff continues to desire to purchase car washes, and she would likely purchase car washes from Defendant if she could trust that Defendant's representations and disclosures regarding the memberships, pricing, and autorenewal terms complied with California law, which she cannot do absent an injunction.

92.    Pursuant to § 17535, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction enjoining Defendant from making car wash membership offers to California consumers that do not comply with California

law, and from posting charges for membership fees without first complying with California law. Plaintiff reserves the right to seek other prohibitory or mandatory aspects of injunctive relief.

93.    Plaintiff individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgements that will prevent Defendant from continuing with its unlawful acts described herein; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (On behalf of Plaintiff and the California Class)

94.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

95.    California law applies to the California Class because California has a significant interest in regulating the conduct of businesses operating within its borders.

96.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

97.    Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

98.    Defendant made unlawful automatic renewal and/or continuous service offers to consumers in California in violation of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, *et seq*., by:

(1) Failing to provide "clear and conspicuous" disclosures mandated by California law, as required by Cal. Bus. & Prof. Code § 17602(a)(1);

(2) Charging Plaintiff and Class Members' credit and debit cards, or payment account with a third party, for an automatic renewal or

continuous service without first obtaining affirmative consent to the agreement containing the automatic renewal offer terms or continuous service terms, as required by Cal. Bus. & Prof. Code § 17602(a)(2);

(3) Failing to provide a consumer with an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code § 17602(a)(3).

99.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

100.    The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

101.    Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous.

102.    Defendant's conduct was and continues to be of no benefit to purchasers of its memberships, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Defendant's advertising. Deceiving consumers into automatic enrollment in Defendant's memberships is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

103.    Under the UCL, a business act or practice is "unlawful" if it violates any other law or regulation.

104.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of its violations of the California ARL, as described above.

105.  Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

106.  Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the car wash membership is not an automatically renewing membership. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

107.  Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

108.  There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

109.  Plaintiff relied on Defendant's omissions in choosing to purchase a car wash or membership.

110.  As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived.

111.  But for Defendant's unlawful, unfair, and fraudulent conduct, Plaintiff and Class members would not have lost the money taken by Defendant's automatic renewal membership scheme. Plaintiff and Class members have suffered injury in fact and have lost money and property as a result of Defendant's conduct.

CLASS ACTION COMPLAINT

112.   As a result of its unfair, unlawful, and fraudulent conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

113.   Accordingly, Plaintiff, individually and on behalf of all others similarly situated, seeks restitution from Defendant of all money obtained from Plaintiff and the Class as a result of Defendant's conduct.

114.   Plaintiff continues to desire to purchase car washes, and she would likely purchase car washes from Defendant if she could trust that Defendant's representations and disclosures regarding the memberships, pricing, and autorenewal terms complied with California law, which she cannot do absent an injunction.

115.   Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

116.   Plaintiff has no adequate remedy at law in part because Defendant's conduct is continuing. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein. Plaintiff also seeks an award of costs and reasonable attorneys' fees pursuant to Cal. Code Civ. P. § 1021.5.

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")

### (Cal. Civ. Code §§ 17200, *et seq.*)

### (On behalf of Plaintiff and the California Class)

117.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

118.   This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

119.   Defendant's sale of car washes and memberships to consumers were "transactions" within the meaning of California Civil Code section 1761(e).

120.   Plaintiff and the California Class members purchased "services" within the meaning of California Civil Code section 1761(b).

121.   Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in and did result in the sale of car wash memberships:

> (a)(5) "[Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have […]"
> (a)(7) "Representing that goods or services are of a particular standard, quality, or grade…if they are of another."
> (a)(9) "Advertising goods or services with intent not to sell them as advertised."
> (a)(14) "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

Cal. Civ. Code § 1770(a)(5), (7), (9), and (14).

122.   Specifically, as alleged herein, Defendant has and continues to misrepresent and omit the terms of their memberships.

123.   Defendant has directed and does direct these misrepresentations and omissions at consumers through marketing communications before purchase.

124.   Plaintiff reasonably relied on Defendant's omissions and misrepresentations. Absent Defendant's omissions and misrepresentations, Plaintiff would not have purchased a car wash membership from Defendant. Defendant's

omissions and misrepresentations were a substantial factor in causing Plaintiff to purchase the car wash membership.

125. Further, reasonable consumers were deceived and are likely to be deceived by Defendant's conduct described herein.

126. Plaintiff continues to desire to purchase car washes, and she would likely purchase car washes from Defendant if she could trust that Defendant's representations and disclosures regarding the memberships, pricing, and autorenewal terms complied with California law, which she cannot do absent an injunction.

127. Defendant continues to violate the CLRA and continues to injure the public by misleading consumers about its membership. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

128. In accordance with California Civil Code section 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement. Plaintiff also seeks an award of costs and reasonable attorneys' fees pursuant to Cal. Code Civ. P. § 1021.5.

129. On August 1, 2025, pursuant to Cal. Civ. Code § 1782(a), Defendant was sent in writing by certified mail, notice of the violations of Section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. A representative for Defendant signed for the mailing on August 4, 2025.

130. Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all consumers within 30 days of receipt of the CLRA notice.

# FOURTH CAUSE OF ACTION

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT ("EFTA")

## 15 U.S.C. § 1693, *et seq*.

### (on behalf of Plaintiff and the EFTA Class)

131.    Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth below.

132.    Plaintiff seeks to recover for Defendant's violations of the Electronic Funds Transfer Act on behalf of themselves and the EFTA Class.

133.    The Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e, *et seq.*, provides a basic framework for establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system.[7] The "primary objective" of the EFTA "is the provision of individual consumer rights."

134.    15 U.S.C. § 1693e(a) provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Similarly, Regulation E provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."[8]

135.    Defendant's transfers of money from the financial accounts of Plaintiff and members of the EFTA Class, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as regulation E and codified at 12 C.F.R. §§ 205, *et seq*. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a

---

[7] 15 U.S.C. § 1693, *et seq.*
[8] 12 C.F.R. § 205.10(b).

financial institution to debit or credit an account."[9] The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal."[10]

136.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693(a)(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

137.    Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id*. at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id*. at ¶10(b), comment 6.

138.    The Official Staff Interpretation of Regulation E also explains, "when a third-party payee," such as Defendant, "fails to obtain the authorization in writing or fails to give a copy to the consumer . . . it is the third-party payee that is in violation of the regulation." *Id*. at 10(b), cmt. 2.

139.    The EFTA includes a private right of action, stating:

(a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—

---

[9] *Id*. § 1693(a)(7).
[10] 12 C.F.R. § 205.3(b)(v)

(1) any actual damage sustained by such consumer as a result of such failure;

(2)

    (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or

    (B) in the case of a class action, such amount as the court may allow, except the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1693m, *et seq*.

140. Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter," pursuant to § 1693(1).

141. Defendant has debited Plaintiff's and class members' bank accounts on a recurring basis without obtaining Plaintiff's or class members' assent to the authorization to make electronic fund transfers. Further, Defendant failed to present the written authorization to Plaintiff and class members at the time the authorization was purportedly made.

142. Defendant's violation of the EFTA harmed Plaintiff and EFTA Class Members.

143. As a direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and EFTA Class Members have suffered damages in the amount of the unauthorized debits taken by Defendant. *See* 1693(m). As a further direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and members of the EFTA Class are entitled to recover statutory damages as provided in the EFTA, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1693m.

CLASS ACTION COMPLAINT

**FIFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(on behalf of Plaintiff and the Classes)**

144. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

145. Plaintiff, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's statutory claims and applies only if the parties' contract is deemed unconscionable, null and void, or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

146. By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed fees upon Plaintiff and the members of the Classes that are unfair, unconscionable, and oppressive.

147. Defendant has unjustly retained a benefit in the form of improper membership fees to the detriment of Plaintiff and the members of the Classes.

148. Defendant has retained this benefit through its fee maximization scheme, and such retention violates fundamental principles of justice, equity, and good conscience.

149. Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Classes and should be required to make restitution to Plaintiff and the members of the Classes

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes respectfully requests that the Court:

B.     Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

C.     Award Plaintiff and the Classes actual, statutory, and punitive damages in an amount to be proven at trial;

D.     Declare Defendant's conduct violates the statutes and common laws referenced herein;

E.     Grant an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

F.     Award Plaintiff and the Classes restitution in an amount to be proven at trial;

G.     Award Plaintiff and the Classes pre- and post-judgment interest in the amount permitted by law;

H.     Award Plaintiff and the Classes attorneys' fees and costs as permitted by law;

I.     Enjoin Defendant from engaging in the practices outlined herein; and

J.     Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Date: November 12, 2025           s/Ryan Ellersick

Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780
ryan.ellersick@zimmreed.com

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (601) 270-0197
chris@jefirm.com

- 35 -

1                                tyler@jefirm.com

2                                winston@jefirm.com

3                                *Pro Hac Vice application to be submitted*

4                                *Counsel for Plaintiff and the Proposed Classes*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 36 -

CLASS ACTION COMPLAINT

1

2

3

4

5

6                              **UNITED STATES DISTRICT COURT**
                              **SOUTHERN DISTRICT OF CALIFORNIA**
7

8    MARYSSA TATE, individually and on behalf          Civil Action No.:
     of all others similarly situated,
9
                                                       **PLAINTIFF MARYSSA TATE'S**
10                             Plaintiff,               **CLRA VENUE DECLARATION**
     v.                                                 **PURSUANT TO CALIFORNIA**
11                                                      **CIVIL CODE § 1780(d)**
     SOAPY JOE'S, INC.,
12
                               Defendant.
13

14          I, Maryssa Tate, declare as follows:

15      1.  I am a class action Plaintiff in this matter and an individual over eighteen years of age. I

16   make this declaration as required by California Civil Code § 1780(d).

17      2.  The Complaint in this action is filed in the proper place because a substantial portion of the

18   events alleged in the Complaint occurred in this district. I reside in San Diego County, California, I

19   purchased the services at issue while present in San Diego County. As such, it is my understanding

20   that Defendant does business in this county and district.

21          I declare under penalty of perjury under the laws of the State of California and the United

22   States that the foregoing is true and correct.

23

24   Dated: ___10/25/2025 | 5:22 PM PDT___      _____
                                                 Maryssa Tate
25

26

27

28